## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

THE ESTATE OF SHALI  :
  TILSON, *et al*., Plaintiffs,  CIVIL ACTION FILE NO.
         :
 vs.        1:19-cv-01353-JPB
         :
SHERIFF ERIC J. LEVETT,
  *et al*., Defendants.  :

## ANSWER TO THIRD AMENDED COMPLAINT FOR DAMAGES

COME NOW SHERIFF ERIC LEVETT, JACKIE BISHOP, JIM BOGARDTS, JORDAN GUILLEBEAU, CHRISTIAN KLEIN, NICHOLAS LYNN, DAWN PATTERSON, LADEAN SHIRED, ERIC TOLBERT, NIKIE WEATHERSBY, and SHARON WILSON, Defendants in the above matter, and file their Answer to Plaintiffs' Third Amended Complaint (Doc. 65, referenced herein as the "Complaint") as follows:

### FIRST DEFENSE

Plaintiffs' Complaint, and each and every paragraph set forth therein, fails to state or set forth claims against these Defendants upon which relief may be granted.

### SECOND DEFENSE

For their second defense, these Defendants answer and respond to the

numbered sections and paragraphs of the Complaint as follows:

## ANSWER TO "PARTIES"

1.    Defendants lack sufficient information to admit or deny the allegations in this paragraph, and therefore deny such allegations and put Plaintiffs on proof of same.

2.    Defendants lack sufficient information to admit or deny the allegations in this paragraph, and therefore deny such allegations and put Plaintiffs on proof of same.

3.    Defendants admit that the referenced estate was established under order of the Rockdale County Probate Court, and the estate sues as stated. Defendants deny that the estate is entitled to any relief from these Defendants.

4.    Defendants lack sufficient information to admit or deny the allegations in this paragraph, and therefore deny such allegations and put Plaintiffs on proof of same.

5.    Defendants admit the allegations set forth in this paragraph.

6.    Defendants admit the allegations set forth in this paragraph.

7.    Defendants admit that Defendants Lang, Tolbert, and Shired were Sheriff's deputies assigned to the booking area where Mr. Tilson was housed on the

evening of his death, and they acted under color of law. Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

8.    Defendants admit that Defendants Patterson, Klein, Bogardts, Guillebeau, Lynn, Wilson, and Bishop were Sheriff's deputies who were employed by the Sheriff at all times relevant to this complaint. Some remain so employed. Said Defendants served as jailers in the Rockdale County Jail, and each served as either a Watch Commander or a Booking Commander during Tilson's incarceration. Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

9.    Defendants admit that Wellpath LLC, an entity formerly known as Correct Care Solutions, LLC ("CCS"), is a private for-profit limited liability company based in Tennessee, and CCS contracted with the County to provide medical and mental health services to inmates at the Rockdale County jail.  Defendants deny any remaining allegations in the form and manner alleged.

### ANSWER TO "JURISDICTION AND VENUE"

10.    Defendants admit the allegations set forth in this paragraph, except to the extent that the Eleventh Amendment to the United States Constitution bars the exercise of federal jurisdiction.

11.    Defendants admit the allegations set forth in this paragraph.

12.    These Defendants have waived service and do not challenge personal jurisdiction, except except to the extent that the Eleventh Amendment to the United States Constitution bars the exercise of federal jurisdiction over Sheriff Levett in his official capacity as Sheriff.  Defendants are not aware of any other Defendant having been served or otherwise submitting to personal jurisdiction.

13.    Defendants do not challenge venue, except except to the extent that the Eleventh Amendment to the United States Constitution bars the exercise of federal jurisdiction over Sheriff Levett in his official capacity as Sheriff.

## Answer to "Chain of Command and Job Duties"

14.    Defendants admit that in March 2018, at least four captains oversaw different divisions of the Sheriff's Office. Defendants deny any remaining allegations in the form and manner alleged.

15.    Defendants admit that at all times relevant to this action, Defendant Weathersby oversaw the jail and served as Jail Commander. Defendants deny any remaining allegations in the form and manner alleged.

16.    Defendants admit the allegations in this paragraph.

17.    Defendants admit the allegations in this paragraph.

4

18.    Defendants admit the allegations in this paragraph.

19.    Defendants admit the allegations in this paragraph.

20.    Defendants admit that on a given shift a Watch Commander had supervisory authority over Sheriff's Office employees staffing the Jail, of whom there were normally 15 or more. Defendants deny that medical staff were under the chain of command of Watch Commanders, and deny the remaining allegations in the form and manner alleged.

21.    Defendants admit that two supervisors, the Booking Commander and the Housing Pod Commander, report to the Watch Commander during a shift. Defendants deny the remaining allegations in the form and manner alleged.

22.    Defendants admit that in some cases a Watch Commander simultaneously worked as Booking Commander, thereby requiring the Watch Commander to fulfill the functions of both positions. Defendants deny the remaining allegations in the form and manner alleged.

23.    Defendants admit that Booking Commanders may be involved in some aspect of the functions referenced in this paragraph.  Defendants deny the remaining allegations in the form and manner alleged.

24.    Defendants admit that Booking Commanders oversee supervision of inmates housed in the booking area of the jail, including those who are in

administrative segregation or on suicide watch. Defendants deny the remaining allegations in the form and manner alleged.

25. Defendants respond that Booking Commanders are required to inspect and sign off on logs in their area of responsibility by the end of the shift, but their area of responsibility does not include medical logs or charting. Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

26. Defendants admit that Booking Commanders oversee supervision of inmates housed in the booking area of the jail; such inmates are provided with meals and under appropriate circumstances can shower, make a phone call(s), and have recreation time. In the case of inmates on suicide watch, a log sheet provides for notation by officers about those functions. Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

27. Defendants admit that generally two booking deputies work under the Booking Commander during a shift. Defendants deny that officers assigned to the booking area routinely "rotate through the Jail on various jobs" during their booking shifts, though such officers may assist with functions in other parts of the jail. Defendants admit that the posts to which officers were

assigned for a shift routinely changed, and there was no specific schedule for assignments, so that an officer assigned to the booking post for a shift may be assigned to a different post on a different shift. Defendants deny the remaining allegations in the form and manner alleged.

28.   Defendants admit that Booking Deputies have responsibilities regarding booking, releasing, processing and overseeing inmates in booking area cells, and those responsibilities can be accomplished by the Booking Commander. Defendants deny the remaining allegations in this paragraph.

## Answer to "Tilson's Arrival at the Jail"

29.   Defendants admit the allegations set forth in this paragraph.

30.   Defendants deny the allegations set forth in this paragraph.

31.   Defendants deny the allegations set forth in this paragraph.

32.   Defendants admit the allegations set forth in this paragraph.

33.   Defendants admit the allegations set forth in this paragraph.

34.   Defendants deny the allegations set forth in this paragraph.

35.   Defendants admit that Sgt. Guillebeau, Cpl. Tatum, Deputy Lightford, and Deputy Kilgore were involved with receiving Tilson, and Deputy Lightford

was involved in booking him. Defendants deny the remaining allegations set forth in this paragraph.

36. Defendants admit the allegations set forth in this paragraph.

37. Defendants admit that Sgt. Guillebeau made contact with Mr. Tilson, and Sgt. Guillebeau observed Mr. Tilson, who screamed racially derogatory comments and made other comments that were unintelligible. Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

38. Defendants admit the allegations set forth in this paragraph.

39. Defendants admit the allegations in the first, second and last sentences in this paragraph, and admit that Deputy Lightford used a closed fist strike on Tilson's leg after Tilson repeatedly resisted restraint of his leg. Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

40. Defendants deny the allegations set forth in this paragraph.

41. Defendants deny the allegations set forth in this paragraph in the form and manner alleged.

42. Defendants state that on March 6, 2018, Mr. Tilson was placed in a padded

cell in the booking area because he was identified as a suicide risk. When he arrived Lieutenant Lynn and Corporal Tatum observed Tilson talking loudly, "wild eyed and shaking," and he stated "I got these bumps all over my skin." Defendants deny the remaining allegations in the form and manner alleged.

43.    Defendants deny the allegations set forth in this paragraph.

44.    Defendants admit that on March 3 and 4, 2018, Tilson acted unusually and/or in some cases did not follow directions. Defendants deny the remaining allegations set forth in this paragraph.

45.    Defendants admit that Tilson was involved in use of force incidents due to his disruptive or insubordinate actions. Defendants deny the remaining allegations set forth in this paragraph.

46.    Defendants admit that on March 3 and 4, 2018, Tilson was involved in use of force incidents due to his disruptive or insubordinate actions, some of which included failure to obey orders or attempts to get away from deputies. Neither Tilson nor any deputy was injured in any of the incidents. Defendants deny any remaining allegations set forth in this paragraph.

47.    Defendants admit the allegations set forth in this paragraph.

48.    Defendants currently have no information that Tilson fought with guards or

otherwise engaged in conduct justifying use of force in the referenced time frame. Defendants deny any remaining allegations set forth in this paragraph in the form and manner alleged.

49. Defendants deny the allegations set forth in this paragraph.

50. Defendants lack sufficient information to admit or deny the allegations set forth in this paragraph, which therefore stand denied under the rules governing pleadings.

51. Defendants admit that before his transfer, Tilson was involved in use of force incidents due to his disruptive or insubordinate actions. Defendants lack sufficient information to admit or deny any remaining allegations set forth in this paragraph, which therefore stand denied under the rules governing pleadings.

52. Defendants deny the allegations set forth in the form and manner alleged.

53. Defendants admit that on March 6, deputies transferred Tilson to the booking area for placement on suicide watch.

54. Defendants admit that Lt. Lynn decided to house Tilson in HC11 for safety reasons, in part due to the prior incidents where officers were required to use force with Tilson. Defendants deny any remaining allegations in the form and manner alleged.

55.    Defendants admit that Tilson was placed on suicide watch by officers rather than a mental health professional. Defendants deny the remaining allegations in this paragraph.

56.    Defendants admit the allegations in this paragraph.

57.    Defendants admit the allegations in this paragraph.

58.    Defendants admit that numerous persons occupy and move within the jail's booking area within any given day.  Defendants deny any further allegations in the form and manner alleged.

59.    Defendants admit the allegations in this paragraph.

60.    Defendants admit the allegations in this paragraph.

61.    Defendants admit the allegations in this paragraph.

62.    Defendants admit the allegations in this paragraph.

63.    Defendants admit the allegations in this paragraph.

64.    Defendants deny the allegations in this paragraph.

65.    Defendants admit that in some cases holding cells in booking, which have running water, toilets and a sleeping area, have been used to house inmates on suicide watch. Defendants deny any remaining allegations in the form and manner alleged.

66.    Defendants deny the allegations in this paragraph in the form and manner

alleged.  Per Patterson

67.   Defendants admit that shift supervisors could change Tilson's cell assignment without further authorization. Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

68.   Defendants deny the allegations in this paragraph in the form and manner alleged.

69.   Defendants deny the allegations in this paragraph.

70.   Defendants respond that a policy indicated "An Administrative Segregation Order form must be filled out in order to house an inmate in" administrative segregation. Defendants deny any remaining allegations in this paragraph.

71.   Defendants admit the allegations in this paragraph.

72.   Defendants deny the allegations in this paragraph.

73.   Defendants deny the allegations in this paragraph, noting that the referenced hearing applies to inmates under disciplinary charges rather than suicidal inmates like Tilson.

74.   Defendants admit that no disciplinary hearing was held regarding Tilson. Defendants deny any other allegations in this paragraph.

75.    Defendants admit that, on information and belief, the referenced video recordings were filed by Plaintiffs.

76.    Defendants admit that the Tilson 2.avi is authentic in regard to depiction of Tilson in cell HC 11, for the time represented in the referenced video. Defendants admit that the Tilson 3.avi is authentic in regard to depiction of a portion of the booking area, including the exterior of some holding cells, for the time represented in the referenced video. Defendants deny any other allegations in the form and manner alleged.

77.    Defendants admit that the video called Booking 2 Cam 11(HC11) 16000-2359.avi is authentic in regard to depiction of Tilson in cell HC 11, from approximately 4:00 p.m. on March 12, 2018. The video reflects Tilson ceasing movement, and later discovery of Tilson's death.  The video shows removal of Tilson's body at approximately the 7:19 mark of the video, after completion of certain investigative procedures. Defendants deny the remaining allegations in the form and manner alleged.

78.    Defendants admit that Tilson was housed in Cell HC11 from March 6 until his death, except for at least one instance where he was removed. Tilson had a suicide smock, and he was provided with food, water and evaluation by medical personnel. Defendants deny the remaining allegations in the form

and manner alleged.

79.    Defendants deny that Defendant Patterson worked on the day shift for March 11, 2018, and note that the shift names (Day, Evening, Morning) are as referenced by jail practice. Otherwise the chart in this paragraph appears to accurately present the referenced officers' shift assignments for the given dates.

80.    This paragraph provides an explanation and interpretation of Plaintiffs' following allegations, apparently without itself providing any substantive allegations. Defendants accept the explanation and interpretation at face value, and deny any substantive allegations against them in this paragraph.

81.    Defendants deny the allegations in this paragraph.

82.    Defendants deny the allegations in this paragraph.

83.    Defendants deny the allegations in this paragraph.

84.    Defendants admit that the Supervisory Defendants were not aware of a suicide attempt by Tilson. Defendants deny the allegations in this paragraph.

85.    Defendants deny the allegations in this paragraph, except to the extent that after a certain time garbage accumulated in Tilson's cell.

86.    Defendants respond that it was common practice for deputies to remove plastic bags before providing food to suicidal inmates, and it is possible that

the photo labelled as "Exhibit 3" reflects one or more plastic baggies. Defendants deny all remaining allegations in this paragraph.

87.    Defendants deny the allegations in this paragraph.

88.    Defendants deny the allegations in this paragraph.

89.    Defendants admit the allegations in this paragraph.

90.    Defendants deny the allegations in this paragraph in the form and manner alleged.

91.    Defendants deny the allegations in this paragraph.

92.    Defendants deny the allegations in this paragraph.

93.    Defendants admit the allegations in this paragraph.

94.    Defendants admit that there was no regular schedule to flush the toilet, as it normally was flushed on an as needed basis. Defendants deny any remaining allegations in the form and manner alleged.

95.    Defendants deny the allegations in this paragraph.

96.    Defendants deny the allegations in this paragraph.

97.    Defendants deny the allegations in this paragraph.

98.    Defendants deny the allegations in this paragraph.

99.    Defendants deny the allegations in this paragraph.

100.    Defendants deny the allegations in this paragraph.

101.  Defendants deny the allegations in this paragraph in the form and manner alleged.

102.  Defendants deny the allegations in this paragraph.

103.  Defendants deny the allegations in this paragraph.

104.  Defendants deny the allegations in this paragraph.

105.  Defendants admit that Tilson was in the padded cell for longer than 72 hours, and some Supervisory Defendants were aware of that. Defendants deny the remaining allegations in this paragraph.

106.  Defendants respond that no hearing would be expected regarding Tilson, but if one had been conducted then few if any Supervisory Defendants would have known about it or been involved. Defendants deny any other allegations in this paragraph.

107.  Defendants submit that one jail policy provision, which is apparently referenced in this paragraph of the operative Complaint, stated:

Inmates may be housed in administrative segregation for the following reasons: … 7. The inmate has **medical or mental health concerns** which necessitate segregation from other inmates or constant monitoring by staff. Medical staff will evaluate the inmate to verify that this is the appropriate housing of the inmate. The use of this treatment must be based on guidelines approved by the facility physician.

(emphasis in original).

Defendants deny any other allegations in this paragraph.

108.   Defendants deny the allegations in this paragraph.

109.   Defendants deny the allegations in this paragraph in the form and manner alleged.

110.   Defendants deny the allegations in this paragraph.

111.   Defendants deny the allegations in this paragraph.

112.   Defendants admit that no particular person was specifically delegated the task of providing water. Defendants deny the remaining allegations in this paragraph.

113.   Defendants admit that they are not aware of any particular person having been specifically delegated the task of providing water. Defendants deny the remaining allegations in this paragraph.

114.   Defendants admit the allegations in this paragraph.

115.   Defendants deny the allegations in this paragraph.

116.   Defendants deny the allegations in this paragraph.

117.   Defendants admit that when fluid was provided in a cup, 8-ounce cups were normally used because they could fit through the cell door flap. Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

118.   Defendants deny the allegations in this paragraph in the form and manner alleged.

119.   Defendants deny the allegations in this paragraph in the form and manner alleged.

120.   Defendants admit that jail officer training did not specifically include required human water consumption or the symptoms of dehydration. Defendants deny the remaining allegations in the form and manner alleged.

121.   Defendants deny the allegations in this paragraph.

122.   Defendants deny the allegations in this paragraph.

123.   Defendants deny the allegations in this paragraph.

124.   Defendants deny the allegations in this paragraph.

125.   Defendants deny the allegations in this paragraph.

126.   Defendants deny the allegations in this paragraph.

127.   Defendants admit that Tilson was not seen by a doctor, and no documentation or other information available to the referenced Defendants reflected Tilson having been seen by a doctor. Defendants deny the remaining allegations in this paragraph.

128.   Defendants deny the allegations in this paragraph.

129.   Defendants respond that Correct Care Solutions (CCS) staffed the Jail with a

mental health professional for 40 hours per week at the time, and normally the mental health professional worked on weekdays rather than weekends; Defendants deny the remaining allegations in the form and manner alleged.

130. Defendants deny the allegations in this paragraph.

131. Defendants acknowledge that absences on a given shift required present officers to carry out functions that would otherwise have been executed by the absent officer(s). Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

132. Defendants deny the allegations in this paragraph in the form and manner alleged.

133. Defendants deny the allegations in this paragraph in the form and manner alleged.

134. Defendants deny the allegations in this paragraph in the form and manner alleged.

135. Defendants deny the allegations in this paragraph.

136. Defendants admit that the referenced form is blank for the day shift time slots, the form was not signed by Defendant Patterson, and Deputy Klein used the same form. Defendants are not aware whether any suicide watch

check was performed during the times the appear blank on the form. Defendants deny the remaining allegations in this paragraph.

137.    Defendants admit that the form for March 7 reflects blanks for 7:15, 7:30, 7:45, 14:00, 14:15, 14:30 and 14:45, times on Defendant Patterson's shift. On the next shift, supervised by Defendants Bogardts and Lang, 19:15 through 22:45 is blank. Defendants are not aware whether any suicide watch check was performed during the times that appear blank on the form. Defendants deny the remaining allegations in this paragraph.

138.    Defendants Shired and Tolbert separately checked Tilson near the beginning of the shift, shortly after 3:00 p.m.  Defendant Lang checked Tilson shortly after 4:00 p.m., at approximately 7:32 p.m. and at approximately 8:25 p.m. Defendants admit that, aside from the foregoing, Sergeant Lang, Officer Tolbert and Officer Shired did not check on Mr. Tilson at the cell door. Defendants admit that Sergeant Lang initialed the suicide watch log form for times 15:25 through 17:45, and for certain of those entries Lang did not go to Mr. Tilson's cell for the check(s). Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

139.    Defendants admit that while in HC 11 on March 6, Tilson received two cups of water. Defendants lack sufficient information to admit or deny the

remaining allegations in this paragraph.

140. Defendants admit the referenced officers acted as supervisors on March 6, 2018.  Defendants deny any remaining allegations in this paragraph.

141. Defendants admit that on March 7, Tilson received three cups of water. Defendants lack sufficient information to admit or deny the remaining allegations in this paragraph.

142. Defendants admit the referenced officers acted as supervisors on March 7, 2018. Defendants deny any remaining allegations in this paragraph.

143. Defendants admit that on March 8, Tilson received two cups of water. Defendants lack sufficient information to admit or deny the remaining allegations in this paragraph.

144. Defendants admit the referenced officers acted as supervisors on March 8, 2018. Defendants deny any remaining allegations in this paragraph.

145. Defendants admit the likelihood that, in addition to looking into Tilson's cell through the window, some jail officers monitored Tilson via closed-circuit video, which provided an adequate view of whether Tilson was involved in a self-harm attempt. Defendants deny the remaining allegations in the form and manner alleged.

146. Defendants admit that the policy required in-person surveillance at approximate 15-minute intervals. Defendants deny that officers were prohibited from monitoring Tilson for self harm via video, and deny the remaining allegations in this paragraph.

147. While acknowledging that human frailty sometimes caused certain forms to be incomplete or bear inaccurate information (such as a wrong date), Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

148. Defendants admit that shift commanders had authority to transfer Tilson to a different cell, as long as the alternative cell was consistent with suicide watch and other circumstances appropriate for Tilson. Defendants deny the remaining allegations in the form and manner alleged.

149. Defendants admit that a log reflects that Tilson either accepted or refused meals on the referenced occasions. Defendants deny the remaining allegations in this paragraph.

150. Defendants admit that shift commanders had authority to transfer Tilson to a different cell, as long as the alternative cell was consistent with suicide watch and other circumstances appropriate for Tilson. Defendants deny the remaining allegations in the form and manner alleged.

151. Defendants admit that photographs reflect food in the cell, indicating Tilson did not eat some of the food provided to him. Defendants deny the remaining allegations in this paragraph.

152. Defendants admit the allegations in this paragraph.

153. Defendants admit the allegations in this paragraph, except to the extent of any implication that any Supervisory Defendant perceived a need to make any such order.

154. Defendants admit that Supervisory Defendants had authority to assign Booking Deputies particular tasks that were within the scope of Booking Deputy duties. Defendants deny any remaining allegations in the form and manner alleged.

155. Defendants admit that, had Tilson displayed a health issue requiring emergency hospitalization that became known to the supervisor, then a supervisor on duty could call for emergency medical aid, including medics who could transport to a hospital. Defendants deny the remaining allegations in the form and manner alleged.

156. Defendants admit that Tilson was treated as an inmate on suicide watch who had a history of altercations with officers, and that differed from housing circumstances of inmates who were not on suicide watch and did not have

such a history.  Defendants deny the remaining allegations in this paragraph.

157.  Defendants state that Tilson's initial suicide watch status was not triggered by medical personnel.  Defendants deny the remaining allegation in this paragraph.

158.  Defendants admit that there is no documentation that Tilson took a shower while housed in HC 11. Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

159.  Defendants admit that there is no documentation that Tilson had a phone call or recreational release from the cell from March 6 until his death. Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

160.  Defendants deny the allegations in this paragraph.

161.  Defendants admit that the policy required in-person surveillance of Tilson to guard against self-harm at approximate 15-minute intervals, and some of those checks were not performed as scheduled. Defendants deny the remaining allegations in this paragraph.

162.  Defendants deny the allegations in this paragraph.

163.  While acknowledging that some inmate yelling (including certain instances by Tilson) does not indicate or trigger a necessary response by an officer,

Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

164.    Defendants deny the allegations in this paragraph.

165.    Defendants admit that Sergeant Lang, Officer Tolbert and Officer Shired were assigned to the booking area, and as such they collectively had responsibility for suicide watch checks on Mr. Tilson every 15 minutes to determine that Mr. Tilson was not harming himself. Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

166.    Defendants deny that Tilson uttered any "cries for help" on the occasion referenced. Defendants deny all remaining allegations in the form and manner alleged.

167.    Defendants Shired and Tolbert separately checked Tilson near the beginning of the shift, shortly after 3:00 p.m.  Defendant Lang checked Tilson shortly after 4:00 p.m., at approximately 7:32 p.m. and at approximately 8:25 p.m. Defendants admit that, aside from the foregoing, Sergeant Lang, Officer Tolbert and Officer Shired did not check on Mr. Tilson at the cell door. Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

168.    Defendants admit that shortly after 4:00 p.m., Sergeant Lang, but not Officer

Tolbert, inserted a styrofoam tray containing food into Mr. Tilson's cell. The food tray did not contain water, except to the extent the food had water in it. Defendants deny any remaining allegations in this paragraph.

169. Defendants deny the allegations in this paragraph.

170. Defendants lack sufficient information, knowledge or belief to admit or deny the first sentence in this paragraph, and therefore deny such allegations and put Plaintiffs on proof of same. Defendants deny the remaining allegations in this paragraph.

171. Defendants admit the allegations in this paragraph.

172. Defendants deny the allegations in this paragraph.

173. Defendants admit that the photo shows Tilson in the cell. Defendants deny the remaining allegations in this paragraph.

174. Defendants admit that at about 5:04 p.m., Mr. Tilson's head drooped forward and he remained in that position, but Defendants deny the remaining allegations in the form and manner alleged. Exhibit 6 appears to have little or no relationship to the allegations in this paragraph.

175. Defendants lack personal knowledge sufficient to admit or deny the allegations in this paragraph, but admit that Sergeant Lang stated he checked the suicide watch log at 5:45 p.m. and saw that it had not been signed since

3:00 p.m.

176. Defendants admit that, based on video, Sergeant Lang did not check through Tilson's cell window at 5:45 p.m. Based on video, Sergeant Lang checked at Tilson's cell at approximately 7:32 p.m., which is when he appears to have written on the log. Defendants deny the remaining allegations in the form and manner alleged.

177. Defendants admit that Sergeant Lang initialed the suicide watch log form for times 15:25 through 17:45, and for certain of those entries Lang did not go to Mr. Tilson's cell for the check(s), but Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

178. Defendants deny the allegations set forth in this paragraph in the form and manner alleged.

179. Defendants admit that Sergeant Lang was the first among Defendants Lang, Tolbert or Shired to check at Mr. Tilson's cell after Tilson was provided food after 4:00 p.m., but Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

180. Defendants admit that at approximately 7:32 p.m., Sergeant Lang checked on Mr. Tilson and appears to have initialed the suicide watch log form for times 15:25 through 17:45.  For certain of those entries Sergeant Lang did

not go to Mr. Tilson's cell for the check(s).  Defendants deny the remaining allegations in this paragraph in the form and manner alleged.

181.   Defendants admit that at 7:30 p.m., Mr. Tilson was seated on the floor and leaning back against the wall with his head dropped forward, and he did not move. Defendants deny the remaining allegations set forth in this paragraph in the form and manner alleged.

182.   Defendants lack sufficient information to admit or deny the allegations in this paragraph, and therefore deny such allegations and put Plaintiffs on proof of same.

183.   Defendants deny the allegations set forth in this paragraph in the form and manner alleged.

184.   Defendants admit that a live feed video monitor was installed for the cell. Defendants deny the remaining allegations in this paragraph.

185.   Defendants admit that Tilson did not make noise between 5:04 and 8:25 p.m. Defendants deny the remaining allegations in this paragraph.

186.   Defendants admit that after approximately 7:32 p.m., the next time Defendants Lang, Tolbert or Shired viewed Mr. Tilson through the cell door was approximately 8:25 p.m., but deny the remaining allegations in the form and manner alleged.

187. Defendants admit that during his check at approximately 8:25 p.m., Sergeant Lang was unable to get a response from Tilson, and he told Deputy Tolbert to "glove up." Defendants deny the remaining allegations in the form and manner alleged.

188. Defendants admit the allegations in the first sentence, and deny the remaining allegations in this paragraph.

189. Defendants admit that, at some points during the shift, Defendants Lang, Tolbert, and Shired were each capable to go to the cell door to check on Mr. Tilson. Defendants Shired and Tolbert separately checked Tilson near the beginning of the shift, shortly after 3:00 p.m. Defendant Lang checked Tilson shortly after 4:00 p.m., at approximately 7:32 p.m. and at approximately 8:25 p.m. Otherwise none of the foregoing Defendants checked at Tilson's door until discovery of Tilson's death. Defendants deny any remaining allegations in this paragraph.

190. Defendants deny the allegations set forth in this paragraph in the form and manner alleged.

191. Defendants lack sufficient information to admit or deny the allegations in this paragraph, and therefore deny such allegations and put Plaintiffs on proof of same.

192. Defendants deny the allegations set forth in this paragraph.

193. Defendants admit the allegations set forth in this paragraph.

194. While acknowledging that certain commanders other than Sheriff Levett outranked Defendant Weathersby and could in theory overrule her, Defendant Weathersby had primary command over jail operations and normally answered to Sheriff Levett. Defendants deny any remaining allegations in this paragraph.

195. Defendants admit the allegations set forth in this paragraph.

196. Defendants admit that Defendant Weathersby previously was a training supervisor for the Sheriff's Office until her appointment to assistant jail administrator in 2013. Defendants deny the remaining allegations in this paragraph.

197. Defendants admit that no additional formal training was provided to Defendant Weathersby when she was appointed. Defendants deny the remaining allegations in this paragraph.

198. Defendants are only aware of one type of specific certification for jail managers, and Defendant Weathersby did not attain that certification. Defendants deny the remaining allegations in this paragraph.

199. Defendants deny the allegations in this paragraph in the form and manner

alleged.

200. Defendants admit that there was a short delay between Defendant Weathersby's receipt and her review of video preserved by the information technology worker(s). Defendants deny the remaining allegations in the form and manner alleged.

201. Defendants admit that the Jail's recording system automatically over-wrote recordings approximately 30 days old, thereby rendering such video unreviewable, and Defendant Weathersby's review and discovery that some video was not copied occurred after the uncopied video had been automatically over-written. Defendants deny the remaining allegations in this paragraph.

202. Defendants admit that Defendant Weathersby was directed to ensure preservation of all video with regard to Tilson's death from the time he entered the facility, and Defendant Weathersby's review and discovery that some video was not copied by the information technology staff occurred after 30 days had elapsed and the uncopied video had been automatically over-written. Defendants deny any remaining allegations in this paragraph.

203. Defendants admit that Defendant Weathersby reviewed the use of force reports and associated incident video relating to Tilson, from approximately

six separate incidents, which occurred between the dates March 3 and 6, 2018. Defendants deny any remaining allegations in this paragraph.

204. Defendants admit that there was no information available to Defendant Weathersby that force was used relating to Tilson after March 6, 2018.

205. Defendants admit that documentation available to Defendant Weathersby while Tilson was alive reflected Tilson was housed in HC 11 for one or more shifts on March 6, 7, 8 and 9, 2018. Defendants deny any remaining allegations in this paragraph.

206. Defendants deny the allegations in this paragraph.

207. Defendants submit that Defendant Weathersby recognized Tilson was placed in HC 11 because he was on suicide watch, and she may have at some point viewed Tilson as having engaged in "erratic behavior." Defendants deny any remaining allegations in this paragraph.

208. Defendants deny the allegations in this paragraph.

209. Defendants deny the allegations in this paragraph.

210. Defendants deny the allegations in this paragraph.

211. Defendants deny the allegations in this paragraph.

212. Defendants deny the allegations in this paragraph.

213. Defendants deny the allegations in this paragraph.

214.    Defendants admit that suicide watch checks were designed to check whether the inmate was involved in attempting self harm. Defendants deny the remaining allegations in the form and manner alleged.

215.    Defendants state that jail officers were not qualified or capable to evaluate or treat "inmates' psychiatric needs," if any, and CCS personnel were responsible for such evaluation and/or any needed treatment. Defendants deny the remaining allegations in this paragraph.

216.    Defendants admit the allegations in this paragraph.

217.    Defendants admit that the Jail did not have a specific "hydration policy," and Defendant Weathersby was familiar with then-existing policies. Defendants deny the remaining allegations in the form and manner alleged.

218.    Defendant Weathersby had no information about the personal knowledge or belief of detention officers about "how much water a person needed to drink in a day." Defendants deny the remaining allegations in the form and manner alleged.

219.    Defendants admit that no particular officer was specifically assigned to provide water to inmates, there was no tracking system for water provision to inmates in HC 11 or HC 12, and Defendant Weathersby was familiar with then-existing policies and practices in the Jail. Defendants deny any

remaining allegations in the form and manner alleged.

220. Defendants deny the allegations in this paragraph in the form and manner alleged.

221. Defendants admit that the referenced internal audit found that firearms were not properly destroyed while Defendant Lang was a supervisor of the property and evidence unit. Defendants deny any remaining allegations in this paragraph.

222. Defendants admit that an internal audit showed that certain required procedures to document firearm storage and destruction were not followed while Defendant Lang was a supervisor of the property and evidence unit. Defendants deny all remaining allegations in this paragraph.

223. Defendants admit the allegations in the first sentence of this paragraph, except that there was no requirement at the time about multiple units of Narcan available in each staff member's vehicle. Defendants deny the remaining allegations in the form and manner alleged.

224. Defendants admit that the audit's author documents having told Defendant Lang in 2017 that retaining seized ammunition for agency personnel was unacceptable. Defendants deny the remaining allegations in this paragraph.

225. Defendants deny the allegations in this paragraph in the form and manner

alleged.

226.   Defendants deny the allegations in this paragraph.

227.   Defendants admit that Defendant Lang received a 29 score on a performance evaluation in December 2017, and that evaluation is included in his personnel file. Defendants deny the remaining allegation in this paragraph.

228.   Defendants admit the allegations in the first sentence of this paragraph. Defendants deny the remaining allegation in this paragraph.

229.   Defendants admit that Defendant Lang was a sergeant in the Jail Division during the time of Tilson's incarceration.  Defendants deny any remaining allegation in this paragraph.

230.   Defendants admit that as part of his duties as a jail sergeant, Defendant Lang sometimes had duties involving inmates on suicide watch, and was a supervisor over other jail officer. Defendants deny the remaining allegations in this paragraph.

231.   Defendants admit the allegations in this paragraph.

232.   Defendants deny the allegations set forth in this paragraph.

233.   Defendants lack sufficient information, knowledge or expertise to admit or deny the allegations in this paragraph, and consequently the allegations stand denied under the pleading rules.

234. Defendants lack sufficient information, knowledge or expertise to admit or deny the allegations in this paragraph, and consequently the allegations stand denied under the pleading rules.

235. Defendants lack sufficient information, knowledge or expertise to admit or deny the allegations in this paragraph, and consequently the allegations stand denied under the pleading rules.

236. Defendants deny the allegations in this paragraph.

237. Defendants deny the allegations in this paragraph.

238. Defendants deny the allegations in this paragraph.

239. Defendants deny the allegations in this paragraph.

## ANSWER TO COUNT 1

240. Defendants deny any substantive allegations in this paragraph.

241. Defendants deny any substantive allegations in this paragraph, while acknowledging the procedural assertion set forth in the paragraph.

242. Defendants deny the allegations in this paragraph.

243. Defendants deny the allegations in this paragraph as they relate to the particular circumstances of this case, and generally deny the allegations in the form and manner alleged.

244. Defendants deny the allegations in this paragraph.

245.  Defendants admit that Watch Commanders could change Tilson's cell assignment, and the Supervisory Defendants could direct a shower or cell cleaning.  Defendants deny the remaining allegations in the form and manner alleged.

246.  Defendants deny the allegations in this paragraph.

247.   Defendants deny the allegations in this paragraph.

ANSWER TO COUNT 2

248.  Defendants deny any substantive allegations in this paragraph.

249.  Defendants deny any substantive allegations in this paragraph, while acknowledging the procedural assertion set forth in the paragraph.

250.  Defendants admit that each Supervisor Defendant regarded Tilson's confinement on his or her shift(s) as appropriate under the circumstances. Defendants deny the remaining allegations in the form and manner alleged.

251.  Defendants deny the allegations in this paragraph in the form and manner alleged, while also pointing out that order in the jail was not the sole reason for Tilson's housing assignment and the caution that officers exercised in dealing with him.

252.  Defendants deny the allegations in this paragraph.

253.  Defendants deny the allegations in this paragraph.

254. Defendants deny the allegations in this paragraph.

ANSWER TO COUNT 3

255. Defendants deny the allegations in this paragraph.

256. Defendants deny any substantive allegations in this paragraph, while acknowledging the procedural assertion set forth in the paragraph.

257. Defendants deny the allegations in this paragraph.

258. Defendants deny the allegations in this paragraph.

259. Defendants deny the allegations in this paragraph.

260. Defendants admit that one or more Supervisor Defendants were aware of Tilson having refused or thrown water. Defendants deny the remaining allegations in this paragraph.

261. Defendants admit that intentional withholding water from a prisoner for six days would likely be unconstitutional, but deny that any such thing occurred in this case. Defendants deny any remaining allegations in this paragraph.

262. Defendants deny the allegations in this paragraph.

ANSWER TO COUNT 4

263. Defendants deny the allegations in this paragraph.

264. Defendants deny any substantive allegations in this paragraph, while acknowledging the procedural assertion set forth in the paragraph.

265. Defendants deny the allegations in this paragraph.

266. Defendants deny any substantive allegations in this paragraph, and any claimed inference therefrom.

267. Defendants admit that Defendant Patterson was on duty on March 7, 8, 9, 10, and 12.  Defendants deny remaining allegations in this paragraph.

268. Defendants admit that Defendant Bogardts was on duty on March 7, 8, 9, and 12.  Defendants deny remaining allegations in this paragraph.

269. Defendants admit that Defendant Lang was on duty on March 7 and 12. Defendants deny remaining allegations in this paragraph.

270. Defendants admit that each Supervisor Defendant's knowledge about any material facts would differ.  Defendants deny the remaining allegations in this paragraph.

271. Defendants deny the allegations in this paragraph.

ANSWER TO COUNT 5

272. Defendants deny any substantive allegations in this paragraph.

273. Defendants deny the allegations in this paragraph.

274. Defendants deny the allegations in this paragraph.

275. Defendants deny the allegations in this paragraph.

276. Defendants lack sufficient information, knowledge or belief to admit or deny the allegations in this paragraph, and therefore said paragraph stands denied under the pleading rules.

277. Defendants deny the allegations in this paragraph.

278. Defendants deny the allegations in this paragraph.

279. Defendants admit the allegations in this paragraph.

280. Defendants admit that certain federal grant funds were received for specified Sheriff's Office operations. Defendants deny the allegations set forth in this paragraph in the form and manner alleged.

281. Defendants lack sufficient information to admit or deny the allegations in this paragraph, and therefore deny such allegations and put Plaintiffs on proof of same.

282. Defendants deny the allegations in this paragraph.

283. Defendants deny the allegations in this paragraph.

284. Defendants deny the allegations in this paragraph.

285. Defendants deny the allegations in this paragraph.

286. Defendants deny the allegations in this paragraph in the form and manner alleged, while acknowledging that Tilson's circumstances differed from those of other inmates who were not identified as suicide risks and/or who

chose to act differently than Tilson while on suicide watch.

287. Defendants deny the allegations in this paragraph.

288. Defendants deny the allegations in this paragraph.

289. Defendants agree that Tilson should have been provided basic necessities such as food, water and facilities to dispose of bodily waste, all of which was offered and/or provided to him, just as to other inmates. Defendants deny the remaining allegations in this paragraph.

290. Defendants deny the allegations in this paragraph.

291. Defendants deny the allegations in this paragraph.

292. Defendants deny the allegations in this paragraph.

293. Defendants deny the allegations in this paragraph.

294. Defendants deny the allegations in this paragraph.

ANSWER TO COUNT 6

295. Defendants deny any substantive allegations in this paragraph.

296. Defendants deny the allegations set forth in this paragraph in the form and manner alleged.

297. Defendants deny the allegations set forth in this paragraph in the form and manner alleged.

298. Defendants deny the allegations in this paragraph.

299.  Defendants deny the allegations in this paragraph.

300.  Defendants deny the allegations in this paragraph.

ANSWER TO COUNT 7

301.  Defendants deny any substantive allegations in this paragraph.

302.  Defendants deny the allegations in this paragraph.

303.  Defendants deny the allegations in this paragraph.

304.  Defendants deny the allegations in this paragraph.

305.  Defendants deny the allegations in this paragraph in the form and manner alleged.

306.  Defendants deny the allegations in this paragraph.

307.  Defendants deny the allegations in this paragraph.

ANSWER TO COUNT 8

308.  Defendants deny all substantive allegations in this paragraph.

309.  Defendants deny all substantive allegations in this paragraph.

Answer to "Request for Relief"

310.  Defendants deny all substantive allegations in this paragraph and deny that Plaintiffs are entitled to any relief whatsoever against any of these Defendants.

311.  Defendants deny all substantive allegations in this paragraph and deny that

Plaintiffs are entitled to any relief whatsoever against any of these Defendants.

312. Defendants deny all substantive allegations in this paragraph and deny that Plaintiffs are entitled to any relief whatsoever against any of these Defendants.

313. Defendants deny all substantive allegations in this paragraph and deny that Plaintiffs are entitled to any relief whatsoever against any of these Defendants.

314. Defendants deny all substantive allegations in this paragraph and deny that Plaintiffs are entitled to any relief whatsoever against any of these Defendants.

315. Defendants deny all substantive allegations in this paragraph and deny that Plaintiffs are entitled to any relief whatsoever against any of these Defendants.

316. Defendants deny all substantive allegations in this paragraph and deny that Plaintiffs are entitled to any relief whatsoever against any of these Defendants.

317. Defendants deny all allegations in the Third Amended Complaint that have not been expressly admitted in this Answer.

### THIRD DEFENSE

Qualified immunity protects the individual Defendants from any constitutional claims brought pursuant to 42 U.S.C. § 1983 because, at all times relevant hereto, Defendants performed objectively reasonable, discretionary acts within the course and scope of their duties as a public officers.

### FOURTH DEFENSE

Sovereign immunity protects any Defendant sued in an official capacity from liability under state law.

### FIFTH DEFENSE

The individual Defendants are protected by official immunity from any state law tort claim raised in the Complaint.

### SIXTH DEFENSE

The Eleventh Amendment to the United States Constitution bars any relief against any Defendant sued in an official capacity, absent an exception or waiver proven by the Plaintiff.

### SEVENTH DEFENSE

Defendants are not liable because they did not breach any tort duty owed to

the decedent in regard to the incident(s) giving rise to the Complaint.

## EIGHTH DEFENSE

The Fourteenth Amendment's due process clause limits punitive damages, and Defendants hereby invoke Georgia law's cap on punitive damages, as well as all other limitations and requirements provided under controlling law.

## NINTH DEFENSE

To the extent that (a) no permanent administrator has been appointed for the Estate of Mr. Tilson, and/or (b) some person(s) other than the Plaintiffs is/are entitled to pursue a wrongful death claim, then Plaintiffs lack standing and are not the real parties in interest.

## TENTH DEFENSE

The decedent never requested any accommodation for an alleged disability, and any alleged required accommodation(s) would have required substantial alteration in the jail's operations and/or placed an undue burden on the Sheriff's Office.

## ELEVENTH DEFENSE

The medical-related claims under the ADA and Rehabilitation Act are not cognizable under those laws, and the remaining claims raise no more than *de minimis* alleged harm to the decedent.

## TWELTH DEFENSE

In regard to claims under the ADA and RA, the relevant Defendant(s) exercised good faith in attempting to pursue legitimate ends, and did not discriminate against the decedent.

## THIRTEENTH DEFENSE

The Americans with Disabilities Act (ADA) is unconstitutional as Plaintiffs seek to apply it in this case.

## FOURTEENTH DEFENSE

Defendant Levett in his official capacity cannot be held liable under 42 U.S.C. § 1983 on the basis of *respondeat superior* liability, and there are no official policies, customs or practices of the Rockdale County Sheriff's Office which proximately caused the alleged conduct which forms the basis of the operative Complaint.

## FIFTEENTH DEFENSE

To the extent applicable, the decedent's injuries and damages are the result of a pre-existing condition for which Defendants are not responsible.

## SIXTEENTH DEFENSE

The decedent's alleged injuries and damages were directly and proximately

caused by his own decisions, actions or inactions, and failure to exercise ordinary care.

## SEVENTEENTH DEFENSE

Any Defendant sued in an official capacity is not a "person" subject to suit under 42 U.S.C. § 1983.

## EIGHTEENTH DEFENSE

Any damages claimed by Plaintiffs should be reduced to the extent that they and/or the decedent failed to mitigate damages.

## NINETEENTH DEFENSE

Plaintiffs lack standing in the absence of an injury in fact to the decedent proximately caused by any Defendant's actionable conduct.

## TWENTIETH DEFENSE

Plaintiffs have alleged in Civil Action 20A/9577, filed in DeKalb State Court, that WELLPATH, LLC f/k/a CORRECT CARE SOLUTIONS, LLC, SOPHIA ALEXANDRA ALLEN, L.P.N., EUGENE MAURICE ANDRY, L.P.N., YTERENICKIA SHANKILL BELL, M.S.W., LATOYA DONISA BOBO, L.P.N., YEZZET LEWIS THOMAS, L.P.N., LEANZA WARREN, Professional Counselor, DANNIA MARIE WINT, L.P.N., and other unnamed persons are liable and responsible for Plaintiffs' alleged damages.    Defendants are not

responsible for the acts or omissions of such persons, which Plaintiffs allege proximately caused the damages sought in the present action.

## TWENTY-FIRST DEFENSE

Defendants are entitled to setoff of any damages award, which must be reduced by the amount of any Plaintiff's recovery from a person or entity due to the alleged suffering and/or death of the decedent. The law prohibits Plaintiffs from recovering more than once for the same alleged harm(s).

## NOTICE OF APPORTIONMENT UNDER O.C.G.A. § 51-12-33

Pursuant to O.C.G.A. § 51-12-33(d)(1) and (2), Defendants hereby provide notice that the following non-parties to this action are alleged by Plaintiffs to be wholly or partially at fault in relation to the Plaintiffs' contentions that the decedent's alleged suffering and death were caused by persons other than the decedent or natural causes:

All Defendants, present and future, sued in Civil Action 20A/9577, filed in DeKalb State Court, styled *Tynesha Renee Tilson, Individually and as Surviving Natural Parent of Shali Tilson, Deceased, and Teri Fields, as Administrator of the Estate of Shali Tilson, Deceased, Plaintiffs, vs. Wellpath, LLC f/k/a Correct Care Solutions, LLC, Sophia Alexandra Allen, L.P.N., Eugene Maurice Andry, L.P.N., Yterenickia Shankill Bell, M.S.W., Latoya Donisa Bobo, L.P.N., Yezzet Lewis*

*Thomas, L.P.N., Leanza Warren, Professional Counselor, Dannia Marie Wint, L.P.N.*, and *John Does 1-10*.

The basis for alleged responsibility of the foregoing persons is set forth in the Complaint filed by Plaintiffs in said Civil Action 20A/9577.

WHEREFORE, having fully answered, Defendants pray that judgment be entered in their favor and against the Plaintiffs, that Plaintiffs take nothing, and that Defendants be awarded their costs and attorney's fees incurred in defending this action.

**TRIAL BY JURY IS DEMANDED.**

WILLIAMS, MORRIS & WAYMIRE, LLC

/s/ Jason Waymire
TERRY E. WILLIAMS
Georgia Bar No. 764330
JASON WAYMIRE
Georgia Bar No. 742602

Bldg. 400, Suite A
4330 South Lee Street
Buford, GA 30518
678-541-0790
678-541-0789

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the within and foregoing

ANSWER AND DEFENSES on all parties via electronic filing the Court's ECF

system, this 13 day of April, 2020.

WILLIAMS, MORRIS & WAYMIRE, LLC

/s/ Jason Waymire
JASON WAYMIRE
Georgia Bar No. 742602

Bldg. 400, Suite A
4330 South Lee Street
Buford, GA 30518
678-541-0790
678-541-0789