UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| THE ESTATE OF SHALI <br>    TILSON, *et al*., Plaintiffs, | | CIVIL ACTION FILE NO. |
| vs. | | 1:19-cv-01353-JPB |
| ROCKDALE COUNTY, GEORGIA, <br>    *et al*., Defendants. | | |

### SHERIFF LEVETT'S INDIVIDUAL REPLY BRIEF IN SUPPORT OF HIS SECOND MOTION FOR JUDGMENT ON THE PLEADINGS

COMES NOW SHERIFF ERIC LEVETT in his personal capacity in the above-styled action, and, pursuant to the Local Rules, files this Reply Brief in Support of his Motion to Dismiss, as follows:

### INTRODUCTION

Plaintiffs sue Sheriff Levett individually as a supervisor under § 1983. Sheriff Levett moved for judgment on the pleadings based on qualified immunity. Plaintiffs do not contest that Sheriff Levett acted within his discretionary duties for purposes of the qualified immunity doctrine. Therefore, "the burden of persuasion [to defeat qualified immunity] is on the Plaintiff[s]." Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997). As discussed in Defendant's previous Brief (Doc. 81-3), and for the reasons elaborated below, qualified immunity bars the claims against Sheriff Levett.

## **ARGUMENT AND CITATIONS TO AUTHORITY**

Plaintiffs' qualified immunity arguments fail in light of the basic, rigorous standards governing the qualified immunity doctrine.

> To be clearly established, a right must be well-established enough "that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) (internal quotation marks omitted and alteration adopted). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate" and thus given the official fair warning that his conduct violated the law. *Id*. (emphasis added); Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (*en banc*) ("The critical inquiry is whether the law provided [Defendant officer] with 'fair warning' that [his] conduct violated the Fourth Amendment.").

Gates v. Khokhar, 884 F.3d 1290, 1296 (11th Cir. 2018) (emphasis in original).

The Supreme Court often has found it necessary to repeat its directive "not to define clearly established law at a high level of generality." Mullenix v. Luna, ––– U.S. ––, 136 S.Ct. 305, 308 (2015) (internal quotation marks omitted); White v. Pauly, 137 S. Ct. 548, 552 (2017) ("Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality.").

One specific case sheds light on the type of binding precedent required to overcome a jail supervisor's qualified immunity, where the claim is based on an allegedly deficient policy or procedure. In Taylor v. Barkes, 135 S. Ct. 2042 (2015), the Supreme Court reversed the Third Circuit's denial of qualified

2

immunity, where the lower court relied upon the vague rule that officials who "know or should know of the particular vulnerability to suicide of an inmate," have an obligation "not to act with reckless indifference to that vulnerability." *Id*. at 2045.  That rule of course "did not say … that detention facilities must implement procedures to identify such vulnerable inmates, let alone specify what procedures would suffice." Taylor, 135 S. Ct. at 2045. Given the dearth of authority that would have told the policymaking officials that the specific procedures used at the jail were unconstitutional, qualified immunity applied. *Id.*

The Eleventh Circuit has captured that idea by saying that "officers are not required to be 'creative or imaginative in drawing analogies from previously decided cases.' " Glasscox v. Argo, City of, 903 F.3d 1207, 1218 (11th Cir. 2018) (quoting Pace v. Capobianco, 283 F.3d 1275, 1282 (11th Cir. 2002) (internal quotation marks omitted).  Rather, for a prior case to defeat qualified immunity, its holding must "dictate[ ], that is, truly compel[ ], the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiff[s'] federal rights in the circumstances." Evans v. Stephens, 407 F.3d 1272, 1282 (11th Cir.2005) (*en banc*) (citation and internal quotation marks omitted).

With these standards in mind, Sheriff Levett considers Plaintiffs' arguments against qualified immunity.

3

**I.   QUALIFIED IMMUNITY BARS PLAINTIFFS' CLAIMS FOR LACK OF ANY PRIOR INCIDENT THAT PUT SHERIFF LEVETT ON NOTICE OF A CONSTITUTIONALLY DEFICIENT POLICY OR PRACTICE**

The most important aspect of the Plaintiffs' Brief is what it omits. There is not a single allegation, argument or hint—not one—that some prior incident told Sheriff Levett that the policies, procedures or alleged "practices" in the Jail had caused a *single* constitutional violation before Mr. Tilson's death. As explained in Defendants' initial brief, that is the end of Plaintiffs' § 1983 claim against Sheriff Levett.

"The standard by which a supervisor can be held liable for the actions of a subordinate is '**extremely rigorous**.' " Piazza v. Jefferson Cty., Alabama, 923 F.3d 947, 957 (11th Cir. 2019) (emphasis supplied; citing Cottone, 326 F.3d at 1360). Plaintiffs are required to allege (1) actual prior constitutional deprivations connected to an acknowledged policy or practice, that were (2) actually brought to the attention of Sheriff Levett with sufficient detail to reveal unconstitutional conduct, and (3) which were "obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). Since Plaintiffs fail to provide factual allegations to support those elements, they have no supervisor liability case. *Id.*; Piazza, 923 F.3d at 958.

There are plenty of cases that make this doctrine plain. Brown, 906 F.2d at 671; Piazza, 923 F.3d at 958; Franklin v. Curry, 738 F.3d 1246, 1252 (11th Cir. 2013) (reversing denial of motion to dismiss based on qualified immunity); Cottone v. Jenne, 326 F.3d 1352, 1361 (11th Cir.2003). Plaintiffs don't discuss any of them.

Plaintiffs try to get around the lack of any prior similar incident by claiming that numerous deputies intended to punish the decedent, which they say was part of a practice.[1] However, "[a] single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several [subordinates]." Craig v. Floyd County, 643 F.3d 1306, 1312 (11th Cir. 2011). So, no matter how many deputies allegedly dealt with the decedent, Plaintiffs are still left with specific allegations about only one single incident—the one they sued about. That is not enough. Craig, 643 F.3d at 1312; Piazza, 923 F.3d at 958.

In a further effort to get around the rule requiring flagrant, rampant, continuous prior constitutional violations, Plaintiffs take the tack of broad, conclusory allegations about policies, practices, Sheriff Levett's knowledge, etc. The courts have soundly rejected this maneuver, instead requiring allegations of

---

[1] Plaintiffs' argument on this point is undercut by the allegations in their various complaints. Mr. Tilson was on suicide watch, which indicates that officers took precautions to protect him. Doc. 83 at ¶55 ("Tilson was … regarded as being on "suicide watch."). That is the *opposite* of deliberate indifference to an inmate's welfare, and it is not "punishment."

actual facts to support the existence of an alleged "practice."  For example, in Smith v. Owens the plaintiff alleged that supervisors:

> used their supervisory positions to establish improper policies and customs that resulted in harsh living conditions for inmates, … and a culture of encouraging corrections officers to perpetrate abuse on inmates. However, *except for conclusory assertions, the complaint failed to allege any facts underpinning these allegations or otherwise supporting a plausible claim for relief*.

Smith v. Owens, 625 F. App'x 924, 927 (11th Cir. 2015) (emphasis in original; affirming dismissal of supervisor liability claims).  The court applied the same rule in Hendrix v. Tucker, 535 F. App'x 803 (11th Cir. 2013), refusing to credit allegations of "a long standing policy, practice, and custom of treating similarly situated prisoners differently" for lack of "any specific facts to support this conclusory statement." *Id.* at 805.

In the same vein—conclusory allegations unworthy of credit for purposes of a motion to dismiss—the operative complaint is full of allegations that Sheriff Levett "knew" or "should have known" this or that. But "by alleging [Sheriff Levett] 'knew or should have known' of [a given fact], [Plaintiffs have] merely recited an element of a claim without providing the facts from which one could draw such a conclusion." Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013).

It is one thing for some event(s) to happen in a large jail. It is something else for the Sheriff—who does not work in the jail—to know about the event(s) and

conclude a constitutionally deficient policy or practice caused it, particularly where no incident arises that indicates there is a problem. That is one reason why supervisor liability requires actual prior constitutional violations, known to the supervisor, that are "obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. Plaintiffs fail to plead anything of the sort, which standing alone requires dismissal of Plaintiffs' supervisor liability claim against Sheriff Levett. Piazza, 923 F.3d at 958.

This ground disposes of every type of claim raised against Sheriff Levett. Moreover, as discussed below, Plaintiffs' theories suffer from additional fatal flaws.

## II. QUALIFIED IMMUNITY BARS PLAINTIFFS' "PUNISHMENT" CLAIM

According to Plaintiffs, their complaint states a claim that "Sheriff Levett was deliberately indifferent to his jailers using Holding Cell 11 as a means to punish inmates." Doc. 83 at 22. What the complaint actually alleges is that Cell 11 was sometimes used as punishment for inmates who violated jail rules, such as for fighting. Doc. 65 at ¶¶ 64, 212, 249, 304. Also, Plaintiffs acknowledge the cell was used for housing inmates on suicide watch, like the decedent. Doc. 65 at ¶¶55, 63. Assuming for the sake of argument that the cell could be used for either purpose, no rational legal conclusion follows.

Contrary to Plaintiffs' apparent belief, pretrial detainees can be punished for violating jail rules, like fighting. See Jacoby v. Baldwin Cty., 835 F.3d 1338, 1348 (11th Cir. 2016) ("[B]efore ... a pretrial detainee is punished for violating a jail rule, there must be a due process hearing … ."). It is, therefore, unremarkable and fully constitutional to use a jail cell to house a pretrial detainee who is under punishment for violating a jail rule. Assuming that the padded cell where the decedent was housed due to suicide precautions happened to have been used on prior occasions to house inmates for disciplinary violations, that point has no legal consequence.

Specifically, Sheriff Levett—who is not alleged to have had any personal knowledge of or involvement in the decedent's incarceration—had no reason to conclude from the decedent's suicide watch status in Holding Cell 11 that some "punishment" was being administered. That is true regardless whether the same cell had been used on some prior occasion to house an inmate(s) for disciplinary reasons. A cell can be used for different purposes, and had Sheriff Levett observed the decedent in Cell 11 he would have concluded that he was there due to suicide precautions.

The latest complaint says as much. "HC 11 and 12 are used by the Jail to hold inmates who have been placed on suicide watch for observation." Doc. 65 at ¶63. "Tilson was … regarded as being on "suicide watch." Doc. 83 at ¶55. The decedent's particular housing assignment furnishes absolutely no basis for federal supervisory liability.

As discussed in the following sections, Plaintiffs completely fail to provide any other basis0 that supports a violation of clearly established law by Sheriff Levett.

### III. QUALIFIED IMMUNITY BARS PLAINTIFFS' SUPERVISION CLAIM RELATING TO DEFENDANT LANG

Plaintiffs argue that Sheriff Levett violated clearly established law due to Defendant Lang being assigned to jail duties. Doc. 83 at 24.[2] The latest complaint alleges that Lang was removed from evidence custodian duties due to incompetence, so (claim Plaintiffs) appointment of Lang to jail duties violated the federal constitution. Plaintiffs fail to cite any binding case that would tend to establish that implausible point, which means that qualified immunity bars this claim.

Generally, a supervisor can only be liable for an employee's intentional tort where the supervisor is deliberately indifferent to the known risk that the subordinate will commit that tort. For example, in <u>Franklin v. Curry</u>, 738 F.3d 1246 (11th Cir. 2013), the Eleventh Circuit held that the complaint did not state a claim against supervising officers in relation to a subordinate jailer's sexual assault of an inmate. The court reversed denial of the supervisors' motion to dismiss for, *inter alia*, lack of any specific allegations about supervisors' "management

---

[2] Plaintiffs waive any claim against Sheriff Levett relating to appointment of Defendant Weathersby over the jail. Doc. 83 at n. 28.

policies, or any other characteristics that would bear on whether they knew about but were deliberately indifferent to [the subordinate's] conduct and the risk he posed." Id. at 1252.

Similarly, here the connection between Lang's alleged incompetence as an evidence custodian and his subsequent alleged role in the jail with the decedent is far too tenuous to even suggest a violation of "clearly established law" by Sheriff Levett. See Bd. of County Comm'rs v. Brown, 520 U.S. 397, 415-16 (1997) (employment decision must reflect "a conscious disregard for a high risk that the officer would [inflict injury] in violation of [the plaintiff's] federally protected right."). Consequently, Defendant Lang's appointment to a position in the jail does not provide a basis for overcoming Sheriff Levett's qualified immunity.

## IV. PLAINTIFFS FAIL TO IDENTIFY CASE LAW THAT DEFEATS SHERIFF LEVETT'S QUALIFIED IMMUNITY

As noted in the introduction, and in Defendant's initial Brief, Plaintiffs bear the burden to identify a case(s) that Sheriff Levett could have read before Mr. Tilson's death, that would have told Sheriff Levett that he had a constitutional duty to make or change jail policies as Plaintiffs claim in this case.  Plaintiffs have no such case.

Plaintiffs rely solely upon the supposed rule that "it is unconstitutional to punish pretrial detainees." Doc. 83 at 23 (citing Magluta v. Samples, 375 F.3d

1269, 1273 (11th Cir. 2004)). The actual rule is that pretrial detainees can be punished following administration of procedural due process. Jacoby v. Baldwin Cty., 835 F.3d 1338, 1348 (11th Cir. 2016) ("[B]efore ... a pretrial detainee is punished for violating a jail rule, there must be a due process hearing … ."). Aside from that, Plaintiffs provide no more than conclusory, fact-bereft allegations that the decedent was intentionally "punished" by jailers, but not with the knowledge or approval of Sheriff Levett.

Here, the latest Complaint provides no well-pleaded, specific factual allegations that Sheriff Levett knew anything about Mr. Tilson or the circumstances of his confinement. Given the lack of allegation that any other inmate had ever been harmed from alleged lack of water while being housed on suicide watch, qualified immunity applies.

The bottom line is that Plaintiffs only sue Sheriff Levett because he is the Sheriff. He had absolutely nothing to do with Mr. Tilson's confinement or any specific decision about Tilson. He had no reason to believe that any jail policy was unconstitutional, and no case or prior incident told him so. Consequently, qualified immunity requires dismissal of Plaintiffs' claims against Sheriff Levett.

## **CONCLUSION**

For each of the foregoing reasons, and as detailed in his initial brief, qualified immunity entitles Sheriff Levett in his individual capacity to dismissal of all claims against him. Defendant requests the Court to certify dismissal as final under Rule 54(b).

                                Respectfully submitted,

                                WILLIAMS, MORRIS & WAYMIRE, LLC

                                /s/ *Jason Waymire*
                                JASON C. WAYMIRE
                                Georgia Bar No. 742602
                                Attorneys for Sheriff Levett

Bldg. 400, Suite A
4330 South Lee Street
Buford, GA 30518
T: 678-541-0790
F: 678-541-0789
jason@wmwlaw.com

## **CERTIFICATION OF COMPLIANCE WITH L.R. 5.1(B).**

Counsel for Defendants certifies that the foregoing Brief complies with the font and point size requirements of Local Rule 5.1(B).

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and foregoing **REPLY BRIEF** upon all parties by electronic delivery through the CM/ECF system.

This May 15, 2020.

                        /s/ Jason C. Waymire
                        JASON C. WAYMIRE
                        Georgia Bar No. 742602