UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THE ESTATE OF SHALI TILSON, et al.,

        Plaintiffs,

      v.

ROCKDALE COUNTY, GEORGIA, et al.,

        Defendants.

CIVIL ACTION NO.
1:19-CV-01353-JPB

## ORDER

This matter is before the Court on Sheriff Eric Levett's ("Defendant") Motion for Judgment on the Pleadings [Doc. 81]. This Court finds as follows:

### FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Shali Tilson, who suffered from schizophrenia, tragically died at the Rockdale County Jail ("the Jail") on March 12, 2018, during a mental health crisis. [Doc. 65, p. 14]. The Estate of Shali Tilson, Tynesha Renee Tilson and Vladimir Joseph (collectively, "Plaintiffs") allege that Tilson arrived at the Jail on March 3, 2018, after being arrested for disorderly conduct and obstruction of justice, both misdemeanors. Id. at 6-7. According to Plaintiffs, Tilson was in the Jail's general population from March 3, 2018, to March 5, 2018. Id. at 8-9. Because of his mental health crisis, Tilson was allegedly disruptive in the general population, thus

requiring Jail employees to use force to control him.  Id.  On March 6, 2018, Tilson

was transferred to Holding Cell 11, which Plaintiffs contend is used to either hold

inmates who have been placed on suicide watch or to punish inmates who violate

Jail rules.  Id. at 13.  According to Plaintiffs, Tilson was "regarded as being on

'suicide watch.'"  Id. at 10.  Plaintiffs allege that Holding Cell 11, which is located

in the Jail's booking area, is a padded room with no furniture, no bed, no toilet and

no sink.  Id. at 10-12.

Plaintiffs claim that Holding Cell 11 was meant to be a short-term holding

cell and prior to Tilson's incarceration, no inmate had ever been housed there for

more than two or three days.  Id. at 13.  Nevertheless, Tilson was in Holding Cell

11 for a period of six days.  While in Holding Cell 11, Plaintiffs allege that Tilson

only received sixteen ounces of water on March 6, twenty-four ounces of water on

March 7, sixteen ounces of water on March 8 and no water for the last three days

of his life.  Id. at 29-34.  They further allege that while in Holding Cell 11, Tilson

was denied medical care and was not allowed out of the cell for any reason,

including to shower.  Id. at 33.  Ultimately, Tilson died on March 12, 2018, from a

pulmonary embolism caused by dehydration.  Id. at 44.

The operative complaint in this matter is Plaintiffs' Third Amended

Complaint, which was filed on January 30, 2020.  Id. at 1.  Plaintiffs asserted eight

different causes of action against numerous defendants based on the conditions of

Tilson's confinement at the Jail.  Only two of the causes of action are against

Defendant.  Specifically, Count V raises a claim against Defendant, in his official

capacity, for violating the Americans with Disabilities Act ("ADA") and the

Rehabilitation Act.  Id. at 51.  Count VII asserts a claim against Defendant, in his

individual capacity, "under a theory of deliberate indifference, failure to train, and

establishment of an unconstitutional policy and practice under 42 U.S.C. § 1983

and the Fourteenth Amendment as it relates to the use of Holding Cell 11 as a

means of punishment."  Id. at 57.  On April 13, 2020, Defendant filed the instant

Motion for Judgment on the Pleadings.  [Doc. 81].

## ANALYSIS

"Judgment on the pleadings is appropriate where there are no material facts

in dispute and the moving party is entitled to judgment as a matter of law."  Perez

v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (citation and

punctuation omitted).  When a district court analyzes whether a party is entitled to

judgment on the pleadings, it must "accept as true all material facts alleged in the

non-moving party's pleading, and . . . view those facts in the light most favorable

to the non-moving party."  Id.

I.    **The ADA and the Rehabilitation Act**

Plaintiffs assert that Defendant, in his official capacity as Sheriff of

Rockdale County, violated Tilson's rights under Title II of the ADA and the

Rehabilitation Act.  In essence, this claim alleges that Defendant denied Tilson a

reasonable accommodation (i.e., access to outside mental health services,

accommodations to the Jail's solitary confinement policies or transfer to a

psychiatric hospital) and discriminated against him because of his disability by

requiring that he be housed in solitary confinement under inhumane conditions.

In his Motion for Judgment on the Pleadings, Defendant argues that the

ADA claim is barred by the Eleventh Amendment.  Defendant further argues that

Plaintiffs failed to state a claim under both the ADA and the Rehabilitation Act.

Because an assertion of sovereign immunity essentially challenges a court's

subject matter jurisdiction, the Eleventh Amendment will be addressed first.  See

Hutchinson v. Cunningham, No. 2:17-cv-185-WKW-GMB, 2018 WL 1474906, at

*24 (M.D. Ala. Jan. 23, 2018).

### 1. Eleventh Amendment Immunity

The Eleventh Amendment bars a damages action against a state in federal

court unless there has been a waiver by the state or a valid congressional override.

Redding v. Georgia, 557 F. App'x 840, 844 (11th Cir. 2014).  The Eleventh

Amendment likewise applies to suits against state officials who are sued for damages in their official capacity. Id. Importantly, immunity does not apply where Congress has: (1) unequivocally expressed its intent to abrogate a states' immunity through a clear legislative statement, and (2) acted pursuant to a valid grant of constitutional authority. Id. The Supreme Court of the United States has held that "insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." United States v. Georgia, 546 U.S. 151, 159 (2006). Interpreting this holding, the Eleventh Circuit Court of Appeals, in Redding, held that to avoid Eleventh Amendment immunity on an ADA claim, the plaintiff must show that the conduct underlying the ADA claim also violated the constitution. 557 F. App'x at 845. See also Rylee v. Chapman, No. 2:06-CV-0158-TWS, 2008 WL 3538559, at *6 (N.D. Ga. Aug. 11, 2008) (finding that the plaintiff failed to meet his burden of proving that Congress abrogated sovereign immunity for an ADA claim where the claim was premised on conduct that violated the ADA but was not otherwise unconstitutional); Odom v. Fla. Dep't of Corr., No. 3:09-cv-570, 2014 WL 4079910, at *9–10 (N.D. Fla. Aug. 19, 2014) (finding that "unless plaintiff establishes that the conduct underlying his ADA claim also violated his constitutional rights, he is barred by the Eleventh

Amendment from recovering money damages … on his ADA claim"); Garner v.

Bryson, No. 5:16-cv-121, 2018 WL 9963836, at *8 (M.D. Ga. Jan. 12, 2018)

(finding that "[a]bsent an actual constitutional violation" the ADA does not

abrogate immunity provided by the Eleventh Amendment).

Defendant argues that Plaintiffs have not shown that the conduct underlying

the ADA claim also violated the constitution.  With the exception of the § 1983

claim brought against Defendant, in his individual capacity, Defendant did not

specifically analyze Plaintiffs' constitutional claims.[1]  Instead of identifying the

elements for the causes of action or pleading deficiencies contained therein,

Defendant simply argues "that the complaint fails to state a claim that any

[d]efendant committed a constitutional violation, which likely will be briefed by

co-[d]efendants." [Doc. 81-3, p. 4].  To date, none of the co-defendants have

moved for dismissal.

Plaintiffs' Third Amended Complaint asserts numerous violations of the

Fourteenth Amendment, including unconstitutional conditions of confinement,

unconstitutional punishment of a pretrial detainee and deliberate indifference to a

---

[1] The constitutional claims are as follows:  Count I (unconstitutional conditions of
confinement in violation of the Fourteenth Amendment), Count II (unconstitutional
punishment of a pretrial detainee in violation of the Fourteenth Amendment), Count III
(failure to supply water in violation of the Fourteenth Amendment) and Count IV
(deliberate indifference to Tilson's medical needs in violation of the Fourteenth
Amendment).

serious medical need.  To prevail on his motion, Defendant must do more than state, in conclusory terms, that Plaintiffs failed to allege any constitutional violation.  At the very least, Defendant should have addressed Counts I, II, III and IV and identified the pleading requirements for each.  Defendant then should have directed the Court to whatever deficiencies exist in Plaintiffs' allegations.  Defendant did not do that, however.  Without adequate briefing on the issue by Defendant, this Court finds that Plaintiffs' allegations are sufficient to overcome Defendant's Eleventh Amendment immunity defense.  As such, this Court finds that Plaintiffs have plausibly shown that the ADA violations simultaneously rise to the level of constitutional violations.  Accordingly, to the extent Defendant seeks judgment based on Eleventh Amendment immunity, Defendant's motion is **DENIED**.

### 2.  Failure to State a Claim

Title II of the ADA prohibits public entities, including local governments, from excluding from participation, denying benefits to or discriminating against individuals with disabilities by reason of those disabilities.  42 U.S.C. § 12132. The Rehabilitation Act imposes parallel restrictions on local governments that receive federal financial assistance.  29 U.S.C. § 794.  A plaintiff alleging discrimination under either the Rehabilitation Act or the ADA must show:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1083 (11th Cir. 2007).

Where a plaintiff seeks compensatory damages, as is the case here, the plaintiff "must clear an additional hurdle" and show that the entity engaged in intentional discrimination. Silberman v. Miami Dade Transit, 927 F.3d 1123, 1134 (11th Cir. 2019). Stated another way, "a plaintiff must show that a defendant violated his rights under the statutes and did so with discriminatory intent." McCullum v. Orlando Reg'l Healthcare Sys., Inc., 768 F.3d 1135, 1146-47 (11th Cir. 2014). "A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights." Id. Deliberate indifference is an "exacting standard." Silberman, 927 F.3d at 1134. "It requires proof that 'the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood." Id.

Moreover, to hold a government entity liable, a plaintiff must also show that an "official" had actual knowledge of discrimination in the entity's programs and failed to adequately respond. Id. At a minimum, the official must have had the authority to address the alleged discrimination and to institute corrective measures

on the entity's behalf.  Id.  The purpose of this rule is to "ensure that an entity is

only liable for the deliberate indifference of someone whose actions can fairly be

said to represent the actions of the organization."  Liese v. Indian River Hosp.

Dist., 701 F.3d 334, 350 (11th Cir. 2012).

> The question of how far up the chain of command one must look
> to find an "official" is necessarily a fact-intensive inquiry, since
> an official's role may vary from organization to organization.  In
> the [ADA or the Rehabilitation Act] context, we conclude that an
> official is someone who enjoys substantial supervisory authority
> within an organization's chain of command so that, when dealing
> with the complainant, the official had complete discretion at a
> "key decision point" in the administrative process.  The "key
> decision point" language reflects the practical reality that, while
> some decisions are technically subject to review by a higher
> authority, such a review is not part of the entity's ordinary
> decision-making process.

 Id. (internal citations omitted).

Defendant argues that dismissal is required because Plaintiffs failed to

sufficiently allege that the entity engaged in intentional discrimination.[2]  Plaintiffs'

allegations that the entity engaged in intentional discrimination are limited.  In

Plaintiffs' Third Amended Complaint, Plaintiffs allege that "supervisory officials

within the Sheriff's Office acted with deliberate indifference to hostile and

---

[2] Defendant also argues that Plaintiffs' claim fails because:  (1) inadequate medical care
cannot ground an ADA claim; (2) Tilson failed to request an accommodation or identify a
reasonable accommodation; and (3) Tilson was not a "qualified individual" under the
ADA.  These arguments, however, will not be addressed because Plaintiffs' failure to
sufficiently allege intentional discrimination by an official is dispositive.

pervasive discrimination." [Doc.65, p. 51]. Specifically, Plaintiffs allege that

Tilson was treated differently from others at the Jail because he was mentally ill.

Id. at 52. Also, Plaintiffs contend that Jail staff acted with "discriminatory

animus" based upon negative associations, biases and prejudices against

individuals with extreme mental illness. Id. at 52-54. Plaintiffs conclude their

allegations by stating that the Jail supervisors acted with deliberate indifference in

the discrimination against Tilson. Id. at 55.

After considering the above allegations, this Court finds that they amount

"to nothing more than a bare bone recital of the deliberate indifference element."

Young v. Miami-Dade Cnty., No. 16-23852-CIV, 2020 WL 2110012, at *7 (S.D.

Fla. Apr. 21, 2020) (determining that a plaintiff's allegation that ongoing

discrimination occurred because of the plaintiff's mental illness was not sufficient

to state a claim). While detained factual allegations are not required, a plaintiff

must show more "than an unadorned, the defendant-unlawfully-harmed-me

accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Importantly, a

complaint will not suffice if it tenders "naked assertions" devoid of "further factual

enhancement." Id. Here, Plaintiffs specifically explain how Tilson was treated

differently. Plaintiffs also assert that Tilson was disabled. What Plaintiffs fail to

do is provide the connecting facts to plausibly show that Tilson was treated

differently because he was disabled.  Here, Plaintiffs merely allege, in conclusory

fashion, that Tilson was treated differently because he was disabled.  This is a

naked assertion that amounts to nothing more than a "formulaic recitation of the

elements" of an ADA and Rehabilitation Act claim.  Id. at 1951; Andrews v. City

of Hartford, 700 F. App'x 924, 927 (11th Cir. 2017) (holding, in the employment

context, that a conclusory statement that the plaintiff was fired because of his

disability was not sufficient).  Just alleging that Tilson was treated differently

because he was disabled is not enough.  See Soto v. City of N. Miami, No. 17-

22090-Civ-Scola, 2017 WL 4685301, at *13 (S.D. Fla. Oct. 17, 2017) (finding that

the allegation that the plaintiff was arrested and imprisoned "solely because he had

a disability" was conclusory).  See also Dudley v. Singleton, No. 3:20-cv-00626-

HNJ, 2020 WL 7401591, at *20 (N.D. Ala. Dec. 17, 2020) (same).

Additionally, the standard of deliberate indifference requires knowledge on

the part of the defendant.  Boynton v. City of Tallahassee, 650 F. App'x 654, 658

(11th Cir. 2016) (explaining that a plaintiff must show that the defendant knew that

harm to a federally protected right was substantially likely).  Here, Plaintiffs only

allege that Defendant and the other Jail employees should have recognized Tilson's

erratic behavior as consistent with an individual in a mental health crisis.  But this

allegation does not suggest that Defendant or the other Jail employees "actually

knew that [Tilson] was disabled or knew that [their] actions were substantially

likely to violate [Tilson's] rights under the ADA or the [Rehabilitation Act]." Id.

at 659.  It is plausible that Jail employees could have attributed Tilson's behaviors

to something other than mental illness.

Ultimately, apart from conclusory language, Plaintiffs do not establish that

either Defendant or any other Jail employee knew that harm to a federally

protected right was substantially likely and failed to act on that likelihood. As such,

Plaintiffs have failed to state a claim under either the ADA or the Rehabilitation

Act, and therefore Count V is dismissed.

## II.   42 U.S.C. § 1983

In Count VII, Plaintiffs contend that Defendant was deliberately indifferent

to the use of Holding Cell 11 as a way to punish inmates in violation of 42 U.S.C.

§ 1983.  [Doc. 83, pp. 21-22].  Additionally, Plaintiffs allege that Defendant was

deliberately indifferent when he hired Deputy Dan Lang.  [Doc. 65, p. 57].

Defendant asserts that Count VII must be dismissed because he is entitled to

qualified immunity.

Even though the defense of qualified immunity is ordinarily addressed at the

summary judgment stage of a case, the Eleventh Circuit has held that it may be

raised and considered on a motion to dismiss or a motion for judgment on the

pleadings.  St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).

Qualified immunity shields government officials "performing discretionary

functions . . . from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable

person would have known."  Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir.

2019).  Qualified immunity protects "all but the plainly incompetent."  Id.  As a

general rule, if the defendant shows that he was acting within the scope of his

discretionary authority, which is undisputed in this case, the plaintiff must attempt

to overcome the qualified immunity defense by showing that:  (1) the defendant

violated a constitutional right and (2) the violated right was clearly established.  Id.

Importantly, "both elements of this test must be present for an official to lose

qualified immunity, and this two-pronged analysis may be done in whatever order

is deemed most appropriate for the case."  Rivera v. Carvajal, 777 F. App'x 434,

437 (11th Cir. 2019).

    This Court will begin by discussing the alleged constitutional violation—

unconstitutional punishment in violation of the Fourteenth Amendment.  Under the

Fourteenth Amendment, a pretrial detainee may not be punished prior to a lawful

conviction.  Piazza v. Jefferson Cnty., Ala., 923 F.3d 947, 952 (11th Cir. 2019).

The government may detain individuals to ensure their presence at trial and may

subject them to the conditions and restrictions of the detention facility so long as

those conditions and restrictions do not amount to punishment.  Bell v. Wolfish,

441 U.S. 520, 536-37 (1979).  The determination of whether a condition of pretrial

detention amounts to punishment turns on whether the condition is imposed for the

purpose of punishment or whether it is incident to some legitimate government

purpose.  Id. at 538.  In other words, if the use of force against a pretrial detainee is

more severe than is necessary to subdue him or otherwise achieve a permissible

governmental objective, it constitutes punishment and is therefore unconstitutional.

Piazza, 923 F.3d at 952.

In this case, it is undisputed that Defendant was not personally involved in

Tilson's incarceration.  The issue then is whether Defendant can be liable for the

actions of his subordinates.  This standard is "extremely rigorous."  Id. at 957.

Absent allegations of personal participation, "supervisory liability is permissible

only if there is a 'causal connection' between a supervisor's actions and the alleged

constitutional violation."  Id.  This showing can be made by demonstrating that a

supervisor's policy or custom resulted in "deliberate indifference to constitutional

rights."  Id.  Similarly, a plaintiff can show an absence of a policy led to a violation

of a constitutional right.  Id.  "Either way, though, to prove that a policy or its

absence caused a constitutional harm, a plaintiff must point to multiple incidents or

multiple reports of prior misconduct by a particular employee." Id. (internal

citations omitted).  Importantly, "[a] single incident of a constitutional violation is

insufficient to prove a policy or custom." Id.

With respect to the unconstitutional punishment claim, Plaintiffs assert that

Defendant had a policy that allowed deputies to use Holding Cell 11 to punish

inmates for violating rules, where those punishments greatly exceeded any need for

institutional security and were carried out for the purpose of retribution against

unconvicted pretrial detainees.  Plaintiffs further allege that Defendant failed to

have a policy for the provision of fluids for those held in Holding Cell 11.

Significantly, Plaintiffs fail to specifically identify any other incidents or reports of

unconstitutional punishment by Jail employees involving Holding Cell 11.  In fact,

Plaintiffs' Third Amended Complaint even stated that no inmate had ever been

held in Holding Cell 11 for more than two or three days.  As to the lack of a policy

concerning fluids, Plaintiffs presented no allegations indicating that other inmates

received inadequate fluids.  Because Plaintiffs' unconstitutional punishment claim

focuses solely on Tilson's treatment while at the Jail—"a single incident of

unconstitutional activity"—it does not, as a matter of law, state a claim against

Defendant for supervisory liability.  See id. (holding that plaintiff failed to meet the

rigorous standard for supervisory liability when he failed to show that any other

inmates suffered the same violation).

Alternatively, Plaintiffs argue that Defendant is liable under § 1983 because

he appointed Deputy Lang to be the supervisor of the booking area.  The test for

establishing supervisory liability based on a hiring decision is one of deliberate

indifference in that the hiring official "disregarded a known or obvious

consequence" of his or her hiring decision.  McDaniel v. Yearwood, No. 2:11-CV-

00165-RWS, 2012 WL 526078, at *17 (N.D. Ga. Feb. 16, 2012).  Specifically,

> [a] plaintiff must demonstrate that the [hiring] decision reflects
> deliberate indifference to the risk that a violation of a *particular*
> constitutional or statutory right will follow the decision. Only
> where adequate scrutiny of an applicant's background would lead
> a reasonable policymaker to conclude that the plainly obvious
> consequence of the decision to hire the applicant would be the
> deprivation of a third party's federally protected right can the
> official's failure to adequately scrutinize the applicant's
> background constitute "deliberate indifference."

Id. (emphasis added).  Importantly, a court must "carefully test" the link between

the inadequate hiring decision and the particular injury alleged.  Bd. of Cnty.

Comm'rs v. Brown, 520 U.S. 397, 410 (1997).

Here, Plaintiffs allege that Deputy Lang was the former supervisor of the

property room and while in that role, he engaged in fraud and theft.  [Doc. 65, p.

57].  Specifically, Plaintiffs contend that Deputy Lang mishandled firearms and

drugs while he was the supervisor of the property room.  These allegations,

however, are not sufficient to support supervisor liability under § 1983 because it

is not plainly obvious that Deputy Lang was likely to inflect the particular injury

suffered by Tilson (unconstitutional punishment resulting in death).  It is apparent

to this Court that mishandling firearms is totally unrelated to the way an inmate is

punished and cared for while in custody.  "[A] finding of culpability simply cannot

depend on the mere probability that any officer inadequately screened will inflict

any constitutional injury." Bd. of Cnty. Comm'rs, 520 U.S. at 412.  Simply put,

Deputy Lang's background involving the mishandling of drugs and firearms is not

strongly connected to the constitutional violation alleged in this case.  As such,

Plaintiffs have not propounded enough facts to show that Defendant's decision to

hire Deputy Lang reflected a conscious disregard of an obvious risk that the

unconstitutional punishment of a pretrial detainee would follow.

In sum, in light of the extremely rigorous standard for supervisory liability

and after carefully considering Plaintiffs' allegations, this Court finds that

Defendant's Motion for Judgment on the Pleadings as to Count VII should be

**GRANTED**.  Count VII is therefore dismissed.

**CONCLUSION**

For the foregoing reasons, this Court **GRANTS** Defendant's Motion for

Judgment on the Pleadings [Doc. 81].  Counts V and VII are **DISMISSED**.

Also pending before the Court is Plaintiffs' Motion to Lift Stay of Discovery

[Doc. 89].  The motion is **GRANTED**.  As noted in this Court's Scheduling Order

[Doc. 50], this case is assigned to an eight-month discovery period.  Discovery

shall close on November 9, 2021.  Dispositive motions shall be filed no later than

December 9, 2021.

    **SO ORDERED** this 10th day of March, 2021.

_____
J. P. BOULEE
United States District Judge